UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| GEORGE B. SWANSON; NATALIE SWANSON,<br><br>Plaintiffs,<br><br>vs.<br><br>ERIC HOLDER, in his official capacity as Attorney General, United States Department of Justice; TOM VILSACK, in his official capacity as Secretary of the United States Department of Agriculture; TOM TIDWELL, in his official capacity as Chief of USDA Forest Service; KEN SALAZAR, in his official capacity as Secretary of the United States Department of the Interior; BOB ABBEY, in his official capacity as Director of the United States Bureau of Land Management; THOMAS GILLETT, in his official capacity as the District Ranger for the Descanco Ranger District of Cleveland National Forest,<br><br>Defendants. | CASE NO. 10-cv-2363 - IEG (NLS)<br><br>**ORDER GRANTING MOTION TO SET ASIDE DEFAULT**<br><br>[Doc. No. 13] |
|---|---|

Presently before the Court is Defendants' motion to set aside the clerk's entry of default. [Doc. No. 13.] The motion has been fully briefed and is suitable for disposition without oral argument under Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendants' motion to set aside default.

### BACKGROUND

The following facts are taken from the complaint. In 1974, Plaintiffs purchased five

mining claims and a millsite named Lord Elgin's Silver Duke Millsite located within the Cleveland National Forest. [Compl. ¶ 17.] Plaintiffs allege that from 1995 to 2006, the federal government placed restrictions on Plaintiffs' access to the millsite and Plaintiffs' mining claims. [Id. ¶¶ 37-66.] Plaintiffs further allege that since 2006, the federal government, specifically the United States Forest Service, has exercised dominion and control over Plaintiffs' personal property located at the millsite as well as their right to use the structures at the millsite. [Id. ¶ 67.]

Based on these restrictions to their property, Plaintiffs filed the present lawsuit on November 16, 2010 against Defendants Eric Holder, Tom Vilsack, Tom Tidwell, Ken Salazar, Bob Abbey, and Thomas Gillett, alleging causes of action for (1) trespass to chattels, (2) conversion, (3) negligence, and (4) declaratory and injunctive relief. [Doc. No. 1.] After Plaintiffs failed to file a proof of service of the complaint, the Court set a hearing for dismissal for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m) on August 10, 2011. [Doc. No. 4.] In response to this, Plaintiffs filed their proof of service on August 24, 2011. [Doc. Nos. 5, 10.] Also on August 24, 2011, Plaintiffs requested an entry of default. [Doc. No. 7.] On August 25, 2011, the Clerk entered default. [Doc. No. 8.] By the present motion, Defendants seek to set aside the clerk's entry of default. [Doc. No. 13.]

## DISCUSSION

### I.  Legal Standards for a Motion to Set Aside the Entry of Default

Pursuant to Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of default upon a showing of good cause. Fed. R. Civ. P. 55(c). To determine "good cause," a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. United States v. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010). "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." Id. In considering a motion to set aside default, a court should bear in mind that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). A district court's

1  determination of whether to set aside the entry of default pursuant to Rule 55(c) is reviewed for
2  abuse of discretion. Mesle, 615 F.3d at 1091.

3  **II.     Analysis**

4      **A.     Culpability**

5      "[A] defendant's conduct is culpable if he has received actual or constructive notice of the
6  filing of the action and intentionally failed to answer." TCI Group Life Ins. Plan v. Knoebber, 244
7  F.3d 691, 697 (9th Cir. 2001) (emphasis in original). "The term 'intentionally' means that a
8  movant cannot be treated as culpable simply for having made a conscious choice not to answer;
9  rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as
10 an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or
11 otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092.

12     Here, Defendants have provided a good faith explanation for their failure to respond to
13 Plaintiffs' complaint. Federal Rule of Civil Procedure 4(i) governs service on federal agencies and
14 federal employees. This rule requires that a plaintiff (1) deliver a copy of the summons and
15 complaint to the U.S. Attorney for the district where the action is brought, and (2) send a copy of
16 the summons and complaint by registered or certified mail to the Attorney General of the United
17 States in Washington, D.C. FED. R. CIV. P. 4(i)(1).

18     Defendants admit that they were served with Plaintiffs' complaint and the summons at the
19 U.S. Attorney's office on February 28, 2011. [Doc. No. 13-1 at 4; Doc. No. 13-3, Declaration of
20 Mary Wiggins ("Wiggins Decl.") ¶¶ 4-5.] However, during monthly check-ins, the office of the
21 Attorney General indicated that it had not received a copy of Plaintiffs' complaint or the summons
22 as recently as September 14, 2011. [Doc. No. 20 at 7; Doc. No. 20-3, Reply Declaration of Mary
23 Wiggins ("Wiggins Reply Decl.") ¶ 5.] Defendants intended to respond to Plaintiffs' complaint by
24 filing a motion to dismiss upon the completion of proper service. [Doc. No. 13-1 at 4; Doc. No.
25 20-2, Reply Declaration of Steve Chu ("Chu Reply Decl.") ¶ 2.] Defendants only recently
26 discovered that the Attorney General did actually receive a copy of the complaint and the
27 summons. [Doc. No. 20 at 7-8; Wiggins Reply Decl. ¶ 5.] Defendants explained that their failure
28 to discover this was due to the complaint being routed in error to the Environmental and Natural

1  Resources Division of the Department of Justice rather than the Civil Division.  [Id.]  Defendants
2  only became aware that service had been completed on August 24, 2011 when Plaintiffs filed their
3  proof of service, which was only one day before default was entered.  [Chu Reply Decl. ¶ 5.]
4       The declarations submitted by Defendants in support of their motion show that they had a
5  good faith reason for failing to respond to Plaintiffs' complaint.  Defendants believed that
6  Plaintiffs had not properly served them in accordance with Federal Rule of Civil Procedure 4(i).
7  While this belief was ultimately in error, that does not mean that it was made in bad faith.  There is
8  absolutely no evidence that Defendants intended to manipulate the legal process by failing to
9  respond to the complaint.  In addition, Defendants diligently monitored the situation by checking
10 in with the office of the Attorney General on a monthly basis.  The Court also notes that
11 Defendants diligently responded to the entry of default by filing their motion to set aside default
12 the next day, which was only two days after Plaintiffs filed their proof of service.  Accordingly,
13 the Court concludes that Defendants' conduct was not culpable.

     **B.**     **Meritorious Defense**

15      "A defendant seeking to vacate a default judgment must present specific facts that would
16 constitute a defense.  But the burden on a party seeking to vacate a default judgment is not
17 extraordinarily heavy."  TCI Group, 244 F.3d at 700 (citations omitted).  "All that is necessary to
18 satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would
19 constitute a defense."  Mesle, 615 F.3d at 1094.
20      Plaintiffs' claims are based on Defendants' alleged interference with Plaintiffs' property at
21 the millsite.  [See Compl.]  Defendants argue that they have a meritorious defense to Plaintiffs'
22 claims because they allege that Plaintiffs never owned the cabin and structures that were removed
23 from the millsite.  [Doc. No. 20 at 4-6.]  Indeed, in a similar case between the two parties
24 involving the property at issue, the district court denied Plaintiffs' request for a temporary
25 restraining order, and it held that "Plaintiffs do not, nor have they ever, owned the structures at
26 issue."  See Swanson v. Bureau of Land Management, No. 10-cv-2363 (S.D. Cal., Order filed
27 Sept. 23, 2009 [Doc. No. 47 at 8]).  This fact if true would be a meritorious defense to Plaintiffs'
28 property claims.  See McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1491 (2006)

(stating that the first element of a conversion claim is "ownership or right to possession of property"); Jamgotchian v. Slender, 170 Cal. App. 4th 1384, 1400 (2009) (stating that trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury" (quotation marks omitted)).

### C. Prejudice

In determining whether the plaintiff will be prejudiced, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." Falk, 739 F.2d at 463. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." TCI Group, 244 F.3d at 701. "[T]he delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Thompson v. American Home Assur. Co., 95 F.3d 429, 433-34 (9th Cir. 1996).

The Court concludes that Plaintiffs will not be prejudiced from setting aside the entry of default. In their opposition, Plaintiffs do not provide any argument of how their ability to pursue their claims will be hindered. Plaintiffs have not shown that setting aside the default would result in the loss of evidence or make discovery more difficult. The only harm that Plaintiffs would appear to suffer by the Court setting aside the entry of default is the short delay of their litigation. This is insufficient to constitute prejudice. See TCI Group, 244 F.3d at 701.

### CONCLUSION

Because all three factors in the Rule 55(c) "good cause" analysis favor setting aside the entry of default, the Court **GRANTS** Defendants' motion to set aside default.

**IT IS SO ORDERED.**

**DATED:** October 4, 2011

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**