1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **SOUTHERN DISTRICT OF CALIFORNIA**

9

10 GEORGE B. SWANSON; NATALIE
SWANSON,

11                                    Plaintiffs,

12          vs.

13 ERIC HOLDER, in his official capacity as
Attorney General, United States Department

14 of Justice; TOM VILSACK, in his official
capacity as Secretary of the United States

15 Department of Agriculture; TOM TIDWELL,
in his official capacity as Chief of USDA

16 Forest Service; KEN SALAZAR, in his
official capacity as Secretary of the United

17 States Department of the Interior; BOB
ABBEY, in his official capacity as Director

18 of the United States Bureau of Land
Management; THOMAS GILLETT, in his

19 official capacity as the District Ranger for the
Descanco Ranger District of Cleveland

20 National Forest,

21                                    Defendants.

22

CASE NO. 10-cv-2363 - IEG (NLS)

**ORDER GRANTING MOTION TO DISMISS**

[Doc. No. 26]

23          Presently before the Court is Defendants' motion to dismiss Plaintiffs' complaint, or in the

24 alternative motion for summary judgment.  [Doc. No. 26.]  For the reasons set forth below, the

25 Court **GRANTS** Defendants' motion to dismiss.

26                                    **BACKGROUND**

27          The following allegations are taken from the complaint.  In 1974, Plaintiffs purchased five

28 mining claims and a millsite named the Lord Elgin's Silver Duke Millsite located within the

1   Cleveland National Forest.  [Doc. No. 1, Compl. ¶ 17.]  The millsite contained several stone
2   structures including a stone cabin, a stone storage structure, a stone toolshed, and a stone
3   woodshed.  [Id. ¶ 18.]  These structures were originally erected in 1938.  [Id.]  From 1974 until
4   approximately 2003, Plaintiffs were given seemingly continuous access to the millsite by the
5   United States Forest Service ("Forest Service") to conduct mining operations.  [Id. ¶¶ 23, 39.]  In
6   1977, the Forest Service granted Plaintiffs permission to use the stone structures without requiring
7   them to submit a plan of operation.  [Id. ¶¶ 26-30.]  Plaintiffs relied on the statements made by the
8   Forest Service and over the years worked to repair, maintain, and improve the stone structures.
9   [Id. ¶ 34.]

10          Plaintiffs allege that eventually the Forest Service grew concerned that the stone structures
11   created an attractive nuisance that could lead to liability issues.  [Compl. ¶ 41.]  On April 30, 2003,
12   Forest Service representatives Rich Teixeira and Timothy Cardoza conducted an examination of
13   the Plaintiffs' mining and millsite claims.  [Id. ¶¶ 49-51.]  Plaintiff George Swanson, and his son
14   Gordon Swanson, were present during the inspection.  [Id. ¶ 50.]  The inspection resulted in a
15   determination that the structures were not "incidental" to the mining operation, and that the
16   government would seize the property and demolish and remove the structures.  [Id. ¶ 53.]
17   Plaintiffs were notified of this decision on or about May 5, 2004.  [Id. ¶ 54.]  Plaintiffs attempted
18   to appeal this decision, but their appeal was unsuccessful.  [Id. ¶ 55.]

19          Despite this determination, from 2004 to 2006, the Forest Service still permitted Plaintiffs
20   to have access to and use the stone structures.  [Compl. ¶ 56.]  However, on April 5, 2006,
21   Plaintiffs attended a meeting with the Forest Service where they were told that they could not carry
22   out any more mining work without submitting a new plan of operation.  [Id. ¶ 58.]  In August
23   2006, Plaintiffs received a notice stating the structures would be posted as government property on
24   September 1, 2006 and instructing Plaintiffs to remove any personal property that they may have
25   inside the structures.  [Id. ¶ 65.]  Also in August 2006, the government posted signs on the
26   structures that read "U.S. Government Property" and "Do Not Enter."  [Id. ¶ 66.]

27          On August 3, 2006, Plaintiffs, proceeding pro se, filed a complaint in the Southern District
28   of California against the Bureau of Land Management ("BLM").  [See Swanson v. Bureau of Land

Mgmt., No. 06-cv-1560-W-WVG, Doc. No. 1 (Compl.).]  On September 15, 2009, Plaintiffs received notice that removal of the stone structures would begin on September 18, 2009.  [Doc. No. 1, Compl. ¶ 78.]  In response, Plaintiffs, now represented by counsel, filed a request for a temporary restraining order ("TRO").  [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 43.]  On September 23, 2009, the district court refused to issue a TRO, but did order the Defendants to give Plaintiffs access to the structures so that they could remove any remaining personal property.  [See id., Doc. No. 47 at 10.]  Plaintiffs removed some, but not all, of their personal property before the structures were demolished on September 25, 2009.  [Doc. No. 1, Compl. ¶¶ 81-82.]

On September 25, 2009, Plaintiffs filed their third amended complaint ("TAC") naming as Defendants Eric Holder, Tom Vilsack, Tom Tidwell, Ken Salazar, Bob Abbey, and Thomas Gillett.  [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 49.]  On January 29, 2010, Plaintiffs filed an administrative tort claim pursuant to the Federal Tort Claims Act ("FTCA") with the Forest Service.  [Doc. No. 1, Compl. Ex. 1; Doc. No. 26, Def.'s Mot. Ex. 3.]  On April 19, 2010, Defendants filed a motion to dismiss Plaintiffs' TAC.  [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 59.]  On October 1, 2010, the district court granted Defendants' motion to dismiss and dismissed many of Plaintiffs' claims for failure to exhaust their administrative remedies.  [See id., Doc. No. 69.]  On September 24, 2010, Plaintiffs received a letter from the forest service denying their administrative tort claim.  [Doc. No. 1, Compl. Ex. 1.]  Subsequently, Plaintiffs filed the present lawsuit on November 16, 2010 against Defendants Eric Holder, Tom Vilsack, Tom Tidwell, Ken Salazar, Bob Abbey, and Thomas Gillett, alleging causes of action for (1) trespass to chattels, (2) conversion, (3) negligence, and (4) declaratory and injunctive relief.  [Doc. No. 1.]  By the present motion, Defendants seek to dismiss all four causes of action.[1]  [Doc. No. 26.]

---

[1] Defendants also move in the alternative for summary judgment.  Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

1

**DISCUSSION**

2

I.      **Legal Standards for a Motion to Dismiss**

3            A complaint must contain "a short and plain statement of the claim showing that the

4    pleader is entitled to relief." FED. R. CIV. P. 8(a).  A motion to dismiss pursuant to Rule 12(b)(6)

5    of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the

6    complaint.  FED. R. CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The

7    court must accept all factual allegations pleaded in the complaint as true, and must construe them

8    and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty

9    Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a

10   complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state

11   a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

12   (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the

13   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14   Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

15           However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

16   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

17   action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286

18   (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  Iqbal, 129 S.

19   Ct. at 1949.  In spite of the deference the court is bound to pay to the plaintiff's allegations, it is

20   not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not

21   alleged or that defendants have violated the . . . laws in ways that have not been alleged."

22   Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526

23   (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

24   _____

25           In support of their motion, Defendants have presented to the Court six exhibits that are outside
the pleadings.  [Doc. No. 26, Exs. 1-6.]  However, pursuant to Federal Rule of Evidence 201, the

26   Court may take judicial notice of these six exhibits because they are matters of public record and/or
part of the administrative record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001);

27   Mack v. South Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986).  A Court may properly
consider judicially noticeable documents in ruling on a motion to dismiss without converting it into

28   a motion for summary judgment.  See Lee, 250 F.3d 688-89.  Accordingly, the Court decides
Defendants' motion as a motion to dismiss and does not convert it into a motion for summary
judgment.

- 4 -                                                    10cv2363

1  stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S.

2  Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

3  **II.      Collateral Estoppel**

4         As an initial matter, Defendants argue that collateral estoppel applies to several legal issues

5  raised by Plaintiffs' claims.  [Doc. No. 26, Def.'s Mot. at 5-6, 9.]  Specifically, Defendants argue

6  that collateral estoppel bars Plaintiffs from (1) alleging that they have an ownership interest in or a

7  right to use the stone structures; and (2) alleging that their claims and millsite are not subject to the

8  provisions of the Surface Resources Act ("SRA").  [Id.]

9         Collateral estoppel, also known as issue preclusion, "prevents a party from relitigating an

10  issue decided in a previous action" if the party asserting collateral estoppel establishes the four

11  following requirements:  (1) there was a full and fair opportunity to litigate the issue in the

12  previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result

13  of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted

14  in the present action was a party or in privity with a party in the previous action.  Kendall v. Visa

15  U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008).  "The burden is on the party seeking to rely

16  upon issue preclusion to prove each of the elements have been met."  Id.

17         **A.      Whether Plaintiffs Have an Ownership Interest In or Right to Use Structures**

18         In denying Plaintiffs' request for a temporary restraining order and a preliminary

19  injunction, the district court in the prior action stated: "Plaintiffs do not, nor have they ever, owned

20  the structures at issue.  And although they do possess a millsite claim, which under the law cited

21  by Defendants allows them to occupy the property incident to mining, that does not appear to

22  entitled them to use and maintain physical structures on the property that the Forest Service has

23  determined are not incidental to any ongoing or potential mining operations."  [Def.'s Mot. Ex. 1

24  at 8.]  Defendants argue that this determination satisfies the requirements of collateral estoppel.

25  [Def.'s Mot. at 5-6.]

26         However, there is a serious question, as to whether a determination made in a preliminary

27  injunction proceeding is a "final judgment on the merits" for the purposes of issue preclusion.

28  Hansen Bev. Co. v. Vital Pharm., Inc., 2008 U.S. Dist. LEXIS 105447, at *6 (S.D. Cal. Dec. 30,

2008).  Although the Third and Seventh Circuit have found that findings made in granting or denying preliminary injunctions can have preclusive effect, they have only done so when the circumstances make it likely that the findings are sufficiently firm to persuade the court that there is no compelling reason for them to be relitigated.  See, e.g., Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir. 1978); Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997); see also Luben Industries, Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir. 1983).  Further, the Ninth Circuit has held that "factual determinations made by a court when granting or denying preliminary injunctive relief, and the legal conclusions drawn from those factual determinations are not final adjudications on the merits."  Hansen, 2008 U.S. Dist. LEXIS 105447, at *8 (citing Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415, 1423 (9th Cir. 1984)).

Defendants do not provide any argument or analysis showing that the prior court's decision was sufficiently firm to persuade the Court that this issue should not be relitigated.  The issue of whether Plaintiffs had a property interest in the structures appears to be a legal conclusion drawn from factual determinations.  Therefore, collateral estoppel does not apply to this determination. See Hansen, 2008 U.S. Dist. LEXIS 105447, at *8.

In their reply, Defendants also appear to argue that this issue was considered and rejected by the district court in the prior proceedings when it dismissed Plaintiffs' cause of action for declaratory relief that was contained in Plaintiffs' TAC.  [Doc. No. 31, Def.'s Reply at 9.] However, this decision also did not result in a "final judgment on the merits."  The Court dismissed Plaintiffs' claim for declaratory relief as moot.  [Def.'s Mot. Ex. 2, at 9.]  A dismissal for jurisdictional reasons, such as mootness, is not a final judgment on the merits for res judicata purposes.  See Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003) (applying Ninth Circuit law); Pac. Eco Solutions, Inc. v. Ecology Servs., 2007 U.S. Dist. LEXIS 22974, at *5 (E.D. Wash. Mar. 29, 2007).  Accordingly, Plaintiffs are not barred by collateral estoppel from alleging that they have an ownership interest in or a right to use the stone structures.

///

**B.     Whether Plaintiffs' Mining Claims and Millsite Are Subject to the SRA**

In the prior litigation, the district court dismissed with prejudice Plaintiffs' cause of action for declaratory relief seeking a judicial declaration that their mining claims and millsite are not subject to the provisions of 30 U.S.C. § 612.  [Def.'s Mot. Ex. 2 at 8-9.]  In dismissing this claim, the prior court stated that the limitations imposed by the SRA applied to claims prior to 1955 and Plaintiffs assertion that the SRA does not apply to their mining claims is without merit.  [Id. at 9.]

This determination satisfies all four requirements of collateral estoppel.  The prior suit was brought by Plaintiffs, Plaintiffs were given a full and fair opportunity to litigate this claim, this claim was actually litigated, and the prior court's determination resulted in a final decision on the merits when it dismissed Plaintiffs' claim with prejudice.  Plaintiffs argue that there was no final decision on the merits because the prior court dismissed Plaintiffs' cause of action for declaratory relief as moot.  [Pl.'s Opp'n at 12.]  In the prior action, as in this case, Plaintiffs requested two different forms of relief within their cause of action for declaratory relief: (1) a declaration stating that the provisions of 30 U.S.C. § 612 do not apply to their mining claims and millsite; and (2) a declaration stating that they had a right to use the stone structures.  [Swanson v. Bureau of Land Mgmt., 06-cv-1560, Doc. No. 49, TAC ¶ 125.]  Although the second request for relief was denied as moot, the first request–the request at issue here–was not denied as moot.  [See Def.'s Mot. Ex. 2 at 8-9.]  The prior court addressed the merits of the first request and dismissed it with prejudice.  [Id. at 9.]  Accordingly, Plaintiffs are barred by the doctrine of collateral estoppel from alleging that the provisions of the SRA do not apply to their mining and millsite claims.

**III.    Plaintiffs' Tort Claims**

Defendants argue that Plaintiffs have failed to name a proper defendant in this action because the Federal Torts Claim Act ("FTCA") allows the United States, and only the United States, to be sued for torts if the alleged torts were committed by a federal agency or employee.  [Def.'s Mot. at 19.]  Defendants argue, therefore, that Plaintiff cannot bring this action against them.  [Id.]

The United States is a sovereign, and may not be sued without its consent.  United States v. Testan, 424 U.S. 392, 399 (1976).  A suit for damages against federal officers or employees in

their official capacity is essentially a suit against the United States and is therefore also barred by sovereign immunity absent statutory consent. Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). The Federal Tort Claims Act ("FTCA") provides such a waiver of sovereign immunity. Richardson v. United States, 943 F.2d 1107, 1113 (9th Cir. 1991). The FTCA is the exclusive remedy for filing a tort action against a federal agency or officer. See 28 U.S.C. § 2679; Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir.1998) (per curiam) ("The FTCA is the exclusive remedy for tort actions against a federal agency."); Jerves v. United States, 966 F.2d 517, 518 (9th Cir. 1992) ("The [FTCA] vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees."). "The [FTCA] provides that the United States is the sole party which may be sued for personal injuries arising out of the torts of its employees." Allen v. Veterans Admin., 749 F.2d 1386, 1388 (9th Cir. 1984) (citing 28 U.S.C. §§ 1346(b), 2679(a)).

Plaintiffs bring three common law tort causes of action against Defendant for conversion, trespass to chattels, and negligence. [Compl. ¶¶ 89-115.] Plaintiffs allege that all the named defendants are either federal agencies or federal employees sued in their official capacities only. [Id. ¶¶ 6-16.] Therefore, the FTCA applies to Plaintiffs' tort claims. See Kennedy, 145 F.3d at 1078; Jerves, 966 F.2d at 518. Because the United States is the sole party that may be sued under the FTCA, Plaintiffs may not bring their tort claims against the Defendants they have named in the complaint. See Allen, 749 F.2d at 1388. Plaintiffs argue that if the Defendants are the improper parties, then the United States is required to file a certification pursuant to 28 U.S.C. § 2679(d), certifying that the individual defendants were acting within the scope of their employment. [Pl.'s Opp'n. at 19.] However, certification in this case would appear to be unnecessary because Plaintiffs concede in their allegations that all the Defendants are either federal agencies or federal employees sued in their official capacities only. [Compl. ¶¶ 6-16.]

Because the United States was not named as a Defendant as required by the FTCA, Plaintiffs have failed to state a claim for tort violations under the FTCA. See Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1188 (9th Cir. 1998); Torrez v. Corr. Corp. of Am., 2007 U.S. Dist. LEXIS 81371, at *13 (D. Ariz. Oct. 16, 2007). Accordingly, the Court **DISMISSES**

1   **WITHOUT PREJUDICE** Plaintiffs' causes of action for conversion, trespass to chattels, and

2   negligence.  If Plaintiffs wish to proceed on these causes of action, they should be brought against

3   the United States.  See, e.g., Allen, 749 F.2d at 1388-89.

4   **IV.     Plaintiffs' Claims for Declaratory and Injunctive Relief**

5           Plaintiffs also bring causes of action for declaratory and injunctive relief.  [Compl. ¶¶ 116-

6   22.]  Claims for prospective relief, such as actions for declaratory and injunctive relief, are not

7   barred by the doctrine of sovereign immunity.  See EEOC v. Peabody Western Coal Co., 610 F.3d

8   1070, 1085-86 (9th Cir. 2010).

9           **A.      Declaratory Relief**

10          Plaintiffs seek two forms of declaratory relief.  [Compl. ¶ 120.]  First, Plaintiffs request a

11  declaration stating that their mining claims and millsite are not subject to the provisions of 30

12  U.S.C. § 612 because the claims were discovered prior to enactment of that statute.  [Id.]

13  Defendants argue that this claim is barred by the doctrine of collateral estoppel.  [Def.'s Mot. at

14  17.]  The Court agrees.  In the previous action, Plaintiffs brought an identical cause of action for

15  declaratory relief, and the district court dismissed it with prejudice.  [See Def.'s Mot. Ex. 2 at 8-9;

16  compare Compl. ¶ 120 with Swanson v. Bureau of Land Mgmt., 06-cv-1560, Doc. No. 49, TAC ¶

17  125.]  Therefore, the doctrine of collateral estoppel bars Plaintiffs from asserting that their mining

18  claims and the millsite are not subject to the provisions of 30 U.S.C. § 612.  See section II.B.

19          Moreover, even if collateral estoppel did not apply to this claim, Plaintiffs' claim should

20  still be dismissed.  30 U.S.C. § 612, enacted in 1955, provides:  "Any mining claim hereafter

21  located under the mining laws of the United States shall not be used, prior to issuance of patent

22  therefor, for any purposes other than prospecting, mining or processing operations and uses

23  reasonably incident thereto."  Plaintiffs allege in the complaint that section 612 does not apply to

24  their claims because they were located prior to the enactment of the statute in 1955.  [Compl. ¶¶

25  31-33.]  In deciding a motion to dismiss, a court need not accept "legal conclusions" as true.

26  Iqbal, 129 S. Ct. at 1949.  Even if section 612 only applied to claims after it was enacted, the

27  limitations that were codified in section 612 existed prior to its enactment in 1955 and would still

28  apply to Plaintiffs' mining claims and millsite.  See United States v. Springer, 321 F. Supp. 625,

1   627 (C.D. Cal. 1970) ("Prior to 1955 it would seem clear that a mining claimant could not use the

2   claim for any purposes other than mining purposes and uses reasonably incident to mining, at least

3   prior to the time that he had done everything to secure a patent even though he had not as yet

4   actually received his patent.");[2] see also United States v. Richardson, 599 F.2d 290, 293 (9th Cir.

5   1979) ("Before 1955 this broad grant was consistently recognized so long as the uses were

6   incident to prospecting and mining.").  Therefore, Plaintiffs' contention that the limitations of

7   section 612 do not apply to their mining claims and millsite is without merit.

8          The second form of declaratory relief Plaintiffs seek is a declaration stating that they had a

9   valid property right in the use of the structures.  [Compl. ¶ 120.]  Defendants appear to argue that

10  this claim is barred by collateral estoppel because the court in the prior litigation determined that

11  Plaintiffs' had no right to use the structures.  [Def.'s Mot. at 17; Def.'s Reply at 9.]  Defendants

12  are only partially correct.  This claim is barred by collateral estoppel, but not for the reason stated

13  by Defendants.  Plaintiffs are not barred by collateral estoppel from asserting that they have an

14  ownership interest in or right to use the structures.  See section II.A.  However, the prior court's

15  determination that this claim is moot is entitled to preclusive effect under the doctrine of collateral

16  estoppel.[3]  See N. Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 433 (11th Cir.

17  1993) (stating that dismissal of prior suit for lack of subject matter jurisdiction bars relitigation of

18  the same jurisdictional question that led to the dismissal); Magnus Elecs., Inc. v. La Republica

19  Argentina, 830 F.2d 1396, 1400 (7th Cir. 1987) (same); GAF Corp. v. United States, 818 F.2d 901,

20  912-13 (D.C. Cir. 1987) (same); Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980) (same).

21  Therefore, the Court **DISMISSES** this claim as moot.  Accordingly, the Court **DISMISSES**

22  **WITH PREJUDICE** Plaintiffs' cause of action for declaratory relief.

23  ───────────────

24         [2] Plaintiffs argue that Springer is not controlling because the defendant in that case had not
    secured a patent for his mining claims.  [Pl.'s Opp'n. at 13-14.]  However, the Court does not find

25  Springer distinguishable from Plaintiffs' case on those grounds.  Plaintiffs only allege that a prior
    owner had applied for a patent; they do not allege that they or the prior owner ever actually secured

26  a patent.  [Compl. ¶¶ 19-22.]

27         [3] Although Defendants do not raise the issue of mootness in their motion, the Court may raise
    both the issue of mootness and collateral estoppel *sua sponte*.  See Clements v. Airport Auth. of

28  Washoe Cnty., 69 F.3d 321, 329-30 (9th Cir. 1995) (recognizing that courts may raise *sua sponte*
    arguments of res judicata and issue preclusion); Dittman v. Cal., 191 F.3d 1020, 1025 (9th Cir. 1999)
    (recognizing that courts may raise the issue of mootness *sua sponte*).

10cv2363

1    **B.      Injunctive Relief**

2         Plaintiffs seek two forms of injunctive relief.  [Compl. ¶ 121.]  First, Plaintiffs seek an

3    order enjoining the Forest Service from restricting Plaintiffs' access to the millsite and their

4    mining claims.  [Id.]  Second, Plaintiffs seek an order requiring the Forest Service to replace the

5    structures that have been removed with appropriate new structures, or alternatively pay Plaintiffs

6    just compensation for the destruction of their right to use the stone structures.  [Id.]  Defendants

7    argue that Plaintiffs' request for injunctive relief is without basis and should be dismissed.  [Def.'s

8    Mot. at 17-19.]  Plaintiffs do not address in their opposition Defendants' arguments in support of

9    dismissal of this cause of action.

10        A plaintiff seeking injunctive relief must "demonstrate: (1) that it has suffered an

11   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

12   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

13   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

14   by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

15   Further, a plaintiff must establish that a "real or immediate threat" exists that he will be wronged

16   again.  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  The alleged threat cannot be

17   "conjectural" or "hypothetical."  Id. at 101-02.

18        With respect to Plaintiffs' request for an injunction enjoining the Forest Service from

19   restricting Plaintiffs' access to the millsite and their mining claims, Plaintiffs do not allege

20   anywhere in their complaint that the Forest Service is currently restricting their access to the

21   millsite or the mining claims, or that it plans to do so in the near future.  Therefore, Plaintiffs have

22   not alleged that a "real or immediate threat" of prospective harm exists.  See Lyons, 461 U.S. at

23   111.

24        With respect to Plaintiffs' request to replace the structures or pay Plaintiffs just

25   compensation, Defendants argue that Plaintiffs have no ownership interest or right to use the

26   structures.  [Def.'s Mot. at 5-9.]  In response, Plaintiffs concede that they are not claiming that

27   they have an ownership interest in the structures, but Plaintiffs do argue that they have a valid

28   right to use the structures.  [Pl.'s Opp'n. at 6, 15-19.]

Based on the allegations in Plaintiffs' complaint, Plaintiffs are unable to show that they have suffered any irreparable injury because they have not sufficiently alleged that they had any property interest in the structures when they were destroyed.  Plaintiffs allege that they had five valid mining claims and a millsite in the Cleveland National Forest at the time the structures were removed and destroyed.  [Compl. ¶¶ 17-18.]  The Ninth Circuit has recognized that the Forest Service may properly regulate the surface use of forest lands and regulate mining operation on those lands.  See Siskiyou Reg'l Educ. Project v. United States Forest Serv., 565 F.3d 545, 550 (9th Cir. 2009); Clouser v. Espy, 42 F.3d 1522, 1529 (9th Cir. 1994).  A mining claim may not be used for purposes other than prospecting, mining or processing operations and uses reasonably incident to mining.  See 30 U.S.C. § 612; Springer, 321 F. Supp. at 627; see also Richardson, 599 F.2d at 293.  A millsite is nonmineral land which is used or occupied by the proprietor for mining or milling purposes.  United States v. Bagwell, 961 F.2d 1450, 1455 (9th Cir. 1992).  Therefore, Plaintiffs' mining claims and millsite would only grant Plaintiffs a right to use the structures if the structures were being used for mining or milling purposes or uses reasonably incident to mining. Plaintiffs do not allege anywhere in the complaint that the structures were being used for those purposes.  To the contrary, Plaintiffs allege that in 2003, representatives of the Forest Service conducted an inspection of their claims and the millsite and determined that the structures were not incidental to the mining operations.  [Compl. ¶¶ 51-54.]  Plaintiffs do not allege that this conclusion was in error or allege facts showing that the structures were incidental to their mining operations.  Therefore, Plaintiffs allegations that they had valid mining claims and a millsite are insufficient to show that they had a property interest in the structures.

Plaintiffs allege that in 1977, the Forest Service sent Plaintiffs a letter approving of their right to use the structures without requiring Plaintiffs to submit a plan of operations.  [Compl. ¶¶ 26-28, 34.]  See United States v. Brunskill, 792 F.2d 938, 940 (9th Cir. 1986) (stating that mining activities likely to cause disturbance of surface resources cannot be carried on in the absence of an approved operating plan).  Plaintiffs also allege that the Forest Service allowed Plaintiffs to use the structures from 1977 to 2006.  [Id. ¶¶ 34-56.]  However, Plaintiffs allege that by at least August 2006, the Forest Service revoked their right to use the structures and declared their claims null and

void.  [Id. ¶¶ 63-68.]  Plaintiffs do not appear to be challenging that determination in this action. Therefore, taking these allegations as true, any interest that Plaintiffs might have had in the structures would have reverted back to the government in 2006.  See, e.g., United States v. Biggs, 2007 U.S. Dist. LEXIS 82328, at *26-29 (E.D. Cal. Nov. 6, 2007) (stating that a cabin became property of the government when plaintiff's mining claims were determined to void); see also Brothers v. United States, 594 F.2d 740, 740-42 (9th Cir. 1979).

Finally, the Court notes that Plaintiffs' allegations stating that they were allowed to use the structures from 1977 to 2006 also cannot create a property interest in the structures.  A person cannot obtain a property right from the United States through adverse possession.  See United States v. Cal., 332 U.S. 19, 39-40 (1947); United States v. Pappas, 814 F.2d 1342, 1343 n.3 (9th Cir. 1987).  Therefore, Plaintiffs have failed to sufficiently allege that they had a right to use the structures in September 2009 when they were demolished and removed.  Based on the allegations in the complaint, the removal of the structures did not injure Plaintiffs.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' cause of action for injunctive relief.

**CONCLUSION**

For the reasons above, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Plaintiffs' complaint.  Specifically, the Court:

    1.    **DISMISSES WITH PREJUDICE** Plaintiffs' cause of action for declaratory relief; and

    2.    **DISMISSES WITHOUT PREJUDICE** Plaintiffs' causes of action for conversion, trespass to chattels, negligence, and injunctive relief.

Plaintiffs may file an amended complaint within (21) calendar days from the date of this Order.

**IT IS SO ORDERED.**

**DATED:** January 24, 2012

**IRMA E. GONZALEZ**
**United States District Judge**

10cv2363