# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE B. SWANSON; NATALIE SWANSON, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendants. | CASE NO. 10-cv-2363 - IEG (NLS) <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> [Doc. No. 38] |

Presently before the Court is Defendant United States of America ("Defendant")'s motion to dismiss Plaintiff George and Natalie Swanson ("Plaintiffs")'s first amended complaint ("FAC"). [Doc. No. 26.] For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

## BACKGROUND

The following allegations are taken from the FAC. In 1974, Plaintiffs purchased five mining claims and a millsite named the Lord Elgin's Silver Duke Millsite located within the Cleveland National Forest. [Doc. No. 34, FAC ¶ 13.] The millsite contained several stone structures including a stone cabin, a stone storage structure, a stone toolshed, and a stone woodshed. [Id. ¶ 14.] These structures were originally erected in 1938. [Id.] From 1974 until approximately 2003, Plaintiffs were given seemingly continuous access to the millsite by the United States Forest Service ("Forest Service") to conduct mining operations. [Id. ¶¶ 19, 33.] In 1977, the Forest Service granted Plaintiffs permission to use the stone structures without requiring

them to submit a plan of operation. [Id. ¶¶ 21-28.] Plaintiffs relied on the statements made by the Forest Service and over the years worked to repair, maintain, and improve the stone structures. [Id. ¶ 29.]

Plaintiffs allege that eventually the Forest Service grew concerned that the stone structures created an attractive nuisance that could lead to liability issues and began to restrict Plaintiffs' access to the millsite and their mining claims in 2003.[1] [FAC ¶¶ 35-36, 40.] On April 30, 2003, Forest Service representatives Rich Teixeira and Timothy Cardoza conducted an examination of the Plaintiffs' mining and millsite claims. [Id. ¶¶ 43-45.] Plaintiff George Swanson, and his son Gordon Swanson, were present during the inspection. [Id. ¶ 44.] The inspection resulted in a determination that the structures were not "incidental" to the mining operation, and that the government would seize the property and demolish and remove the structures. [Id. ¶ 47.] Plaintiffs were notified of this decision on or about May 5, 2004. [Id. ¶ 48.] Plaintiffs attempted to appeal this decision, but their appeal was unsuccessful. [Id. ¶ 49.]

Despite this determination, from 2004 to 2006, the Forest Service still permitted Plaintiffs to have access to and use the stone structures. [FAC ¶ 50.] Plaintiffs allege that in 2004, they were mining quartz and operating under a valid permit. [Id. ¶¶ 51, 70.] However, on April 5, 2006, Plaintiffs attended a meeting with the Forest Service where they were told that they could not carry out any more mining work without submitting a new plan of operation. [Id. ¶ 52.] In August 2006, Plaintiffs received a notice stating the structures would be posted as government property on September 1, 2006 and instructing Plaintiffs to remove any personal property that they may have inside the structures. [Id. ¶ 59.] Also in August 2006, the government posted signs on the structures that read "U.S. Government Property" and "Do Not Enter." [Id. ¶ 60.] Since 2006, the Forest Service has exercised dominion and control over Plaintiff's personal property located at the millsite and their right to use the structures. [Id. ¶ 62.]

On August 3, 2006, Plaintiffs, proceeding *pro se*, filed a complaint in the Southern District

---

[1] Plaintiffs specifically note in the FAC that in 2003, there was a forest fire in the Cleveland National Forest known as the Cedar Wildfire. [FAC ¶ 42.] Plaintiffs allege that during this fire, the Forest Service was required to divert its resources and deploy two engines to protect the stone structures, while other parts of the forest remained burning. [Id.]

1  of California against the Bureau of Land Management ("BLM"). [See Swanson v. Bureau of Land
2  Mgmt., No. 06-cv-1560-W-WVG, Doc. No. 1 (Compl.).] On September 15, 2009, Plaintiffs
3  received notice that removal of the stone structures would begin on September 18, 2009. [FAC ¶
4  72.] In response, Plaintiffs, now represented by counsel, filed a request for a temporary restraining
5  order ("TRO"). [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 43.] On
6  September 23, 2009, the district court refused to issue a TRO, but did order the defendants to give
7  Plaintiffs access to the structures so that they could remove any remaining personal property. [See
8  id., Doc. No. 47 at 10.] Plaintiffs removed some, but not all, of their personal property before the
9  structures were demolished on September 25, 2009. [FAC ¶¶ 75-76.]
10      On September 25, 2009, Plaintiffs filed their third amended complaint ("TAC") naming as
11 Defendants Eric Holder, Tom Vilsack, Tom Tidwell, Ken Salazar, Bob Abbey, and Thomas
12 Gillett. [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 49.] On January 29,
13 2010, Plaintiffs filed an administrative tort claim pursuant to the Federal Tort Claims Act
14 ("FTCA") with the Forest Service. [Doc. No. 1, Compl. Ex. 1; Doc. No. 26, Def.'s Mot. Ex. 3.]
15 On April 19, 2010, Defendants filed a motion to dismiss Plaintiffs' TAC. [See Swanson v. Bureau
16 of Land Mgmt., No. 06-cv-1560, Doc. No. 59.] On October 1, 2010, the district court granted
17 Defendants' motion to dismiss and dismissed many of Plaintiffs' claims for failure to exhaust their
18 administrative remedies. [See id., Doc. No. 69.] On September 24, 2010, Plaintiffs received a
19 letter from the Forest Service denying their administrative tort claim. [Doc. No. 1, Compl. Ex. 1.]
20      Subsequently, Plaintiffs filed the present lawsuit on November 16, 2010 against
21 Defendants Eric Holder, Tom Vilsack, Tom Tidwell, Ken Salazar, Bob Abbey, and Thomas
22 Gillett, alleging causes of action for (1) trespass to chattels, (2) conversion, (3) negligence, and (4)
23 declaratory and injunctive relief. [Doc. No. 1, Compl.] On January 24, 2012, the Court granted
24 Defendants' motion to dismiss the complaint and gave Plaintiffs leave to file a first amended
25 complaint. [Doc. No. 33.] On February 14, 2012, Plaintiffs filed a first amended complaint
26 against Defendant United States of America alleging three causes of action under the Federal Torts
27 Claims Act ("FTCA") for (1) trespass to chattels, (2) conversion, and (3) negligence. [Doc. No.
28 34.] By the present motion, Defendant seeks to dismiss all three causes of action in the FAC.

[Doc. No. 38.]

## DISCUSSION

### I. Legal Standards for a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. FED. R. CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. Iqbal, 129 S. Ct. at 1949. In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

### II. Exhaustion

As an initial matter, Defendant argues that Plaintiffs may not bring causes of action under

1  the FTCA related to the destruction of any personal property they had in the stone structures when
2  they were removed, because Plaintiffs never exhausted these claims. [Doc. No. 38-1 at 6-8.]
3  Specifically, Defendant acknowledges that Plaintiffs filed two administrative tort claims with the
4  Forest Service in January 2010, but Defendant argues that the claims only discussed Plaintiffs'
5  right to use the structures and never mentioned Plaintiffs' personal property that was located inside
6  the structures. [Id. at 8.] In response, Plaintiffs argue that the administrative claims mention
7  Plaintiffs' right to use the stone structures, which is a personal property right. [Doc. No. 40 at 5-
8  6.]

9  The United States is a sovereign, and may not be sued without its consent. United States v.
10 Testan, 424 U.S. 392, 399 (1976). The Federal Tort Claims Act ("FTCA") provides such a waiver
11 of sovereign immunity. Richardson v. United States, 943 F.2d 1107, 1113 (9th Cir. 1991).

12 "However, the Act further provides that before an individual can file an action against the
13 United States in district court, she must seek an administrative resolution of her claim." Jerves v.
14 United States, 966 F.2d 517, 518 (9th Cir. 1992) (citing 28 U.S.C. § 2675(a)). Specifically,
15 "[s]ection 2675(a) requires the claimant or his legal representative to file (1) a written statement
16 sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum
17 certain damages claim." Cadwalder v. United States, 45 F.3d 297, 301 (9th Cir. 1995). This
18 exhaustion requirement serves the important objective of encouraging the "administrative
19 settlement of claims against the United States and thereby to prevent an unnecessary burdening of
20 the courts." Jerves, 966 F.2d at 520. The Ninth Circuit has explained that the notice requirement
21 under section 2675(a) is minimal. Shipek v. United States, 752 F.2d 1352, 1354 (9th Cir. 1985);
22 see also Avery v. United States, 680 F.2d 608, 610 (9th Cir. 1982) (noting "a skeletal claim form,
23 containing only the bare elements of notice of accident and injury and a sum certain representing
24 damages" is sufficient).

25 Plaintiffs each filed an administrative tort claim with the Forest Service that the agency
26 received on January 29, 2010. [Doc. No. 38-2 Ex. 1[2].] Under the heading "Basis of Claim," both

---

[2] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of Plaintiffs' administrative tort claims because they are matters of public record and are part of the administrative record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Mack v. South Bay Beer

claims state:

> Negligence, conversion, trespass to chattel, abuse of process arising from the USFS exerting dominion and control over Claimant's property right to use of stone cabin, pump house, and storage structure on millsite located in the Cleveland National Forest, specifically the Lord Elgin millsite. Claimant's right to use these structures was established by the fact that the mine existed and operated prior to the passage of the Surface Resources Act in 1955. The USFS wrongfully asserted control over the structures when Claimant's property rights to use the same were exempt from the provisions of the SRA, therefore the USFS had no authority to interfere with and to destroy and remove the structures, thereby destroying Claimant's property right.

[Id.] Under the heading "Property Damage," both claims state: "The property is the right to use of stone cabin, pumphouse located on millsite which is located in the Cleveland National Forest, California." [Id.] In addition, George Swanson's claim also states "Demolished 3 Bldgs." [Id.] Finally, under the heading "Personal Injury/Wrongful Death," both claims state: "Loss of use of property and ability to conduct mining operations because the structures were needed for the same." [Id.]

The only injury that is mentioned in both of these claims is the loss of Plaintiffs' right to use the stone structures due to their destruction. The claims never mentioned that Plaintiffs also lost personal property that was contained inside the structures when they were destroyed. Thus, the administrative claims fail to provide even "minimal" notice of that particular injury and are insufficient to exhaust any claims related to personal property that may have been located inside the stone structures when they were demolished. See Cadwalder, 45 F.3d at 301; Avery, 680 F.2d at 610. Plaintiffs argue that they have alleged that they lost personal property in the administrative claims because the right to use the structures is a personal property right. [Doc. No. 40 at 5-6.] However, even if this were true, the loss of the right to use the structures is still a different injury from the destruction of personal property located inside the structures. To satisfy the exhaustion requirement, Plaintiffs were required to sufficiently describe their injury in order to enable the agency to begin its own investigation. Cadwalder, 45 F.3d at 301. The two administrative claims filed by Plaintiffs would not enable the agency to investigate whether Plaintiffs' personal property

---

Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986).

1  located in the stone structures was improperly destroyed because the claims do not even notify the
2  agency that there was any personal property inside the structures at the time of the demolition.
3  Accordingly, Plaintiffs have failed to satisfy the FTCA's exhaustion requirement with respect to
4  their claims for the destruction of personal property inside the stone structures.  Plaintiffs' tort
5  claims are **DISMISSED WITH PREJUDICE** to the extent they are based on the destruction of
6  any personal property contained in the stone structures when they were demolished.

### III.    Plaintiffs' Common Law Tort Claims

Plaintiffs bring three common law tort causes of action under the FTCA against Defendant for conversion, trespass to chattels, and negligence. [FAC ¶¶ 83-108.]  Defendant argues that Plaintiffs have failed to state a claim under these three causes of action because Plaintiffs did not have any property interest in the stone structures and Plaintiffs' claims related to their personal property inside the structures were never exhausted.  [Doc. No. 38-1 at 9-16.]

Under the FTCA, the substantive law governing a plaintiff's tort claim is the "law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Plaintiffs allege that the actions at issue took place in California, specifically the Cleveland National Forest.  [FAC ¶¶ 13-82.]  Accordingly, Plaintiffs' tort claims are governed by California law.  See Littlejohn v. United States, 321 F.3d 915, 924 (9th Cir. 2003).

Under California law, the elements of a cause of action for conversion are: " (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998).  Known as the "little brother of conversion," "the tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion . . . .'"  Jamgotchian v. Slender, 170 Cal. App. 4th 1384, 1400 (2009).  Specifically, the elements of a cause of action for trespass to chattels are: (1) inference with possession; (2) of personal property; and (3) damages suffered by reason of the impairment of the property or the loss of its use.  Id. at 1400-01.  Finally, the elements of a cause of action for negligence are: (1) duty; (2) breach of that duty; (3) proximate cause; and (4) damages.  Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 279 (2004).

1  In the FAC, Plaintiffs allege that the personal property that was interfered with and
2 damaged in support of their conversion and trespass to chattels claims is the right to use the stone
3 structures and the personal property that was contained inside the stone structures when they were
4 demolished. [FAC ¶¶ 84-88, 92-99.] Similarly in support of their claim for negligence, Plaintiffs
5 allege that the damages they suffered was interference with their personal property, including the
6 right to use the stone structures. [Id. ¶ 105.]

7  With respect to the personal property that was contained inside the structures when they
8 were demolished, as explained above, these claims are **DISMISSED WITH PREJUDICE** for
9 failure to satisfy the exhaustion requirements of the FTCA. See supra section II. With respect to
10 Plaintiffs' claim that Defendant interfered with their right to use the stone structures, Defendant
11 argues that Plaintiffs did not have any property interest in the stone structures when they were
12 demolished. [Doc. No. 38-1 at 9-12.] Therefore, they could not have been damaged by their
13 removal. [Id.]

14  Plaintiffs allege that they had five valid mining claims and a millsite in the Cleveland
15 National Forest. [FAC ¶ 13.] Plaintiffs also allege that the prior owner of the claims applied for
16 patented title to the claims in 1974, but that the patent process was never completed. [Id. ¶¶ 15-
17 17.] Therefore, Plaintiffs allege that at most they had unpatented mining claims and a millsite at
18 the time the structures were removed and destroyed.

19  "Under the Mining Law of 1872, an individual who discovers a valuable mineral deposit
20 on federal land may locate a mining claim." United States v. Backlund, 2012 U.S. App. LEXIS
21 8462, at *4 (9th Cir. Apr. 26, 2012). Under 30 U.S.C. § 26, "so long as the claimant complies with
22 federal, state and local law, he shall have 'exclusive right of possession and enjoyment of all the
23 surface included within the lines of [his] locations.'" Id. (quoting 30 U.S.C. § 26). However, this
24 right is subject to certain limitations. Id.

25  A mining claim may not be used for purposes other than prospecting, mining or processing
26 operations and uses reasonably incident to mining. See 30 U.S.C. § 612(a); Backlund, 2012 U.S.
27 App. LEXIS 8462, at *5; United States v. Springer, 321 F. Supp. 625, 627 (C.D. Cal. 1970). In
28 addition, "An 'unpatented' claim is a possessory interest in a particular area solely for the purpose

of mining; it may be contested by the government or a private party.'" Clouser v. Espy, 42 F.3d 1522, 1525 n.2 (9th Cir. 1994). A millsite is nonmineral land which is used or occupied by the proprietor for mining or milling purposes. United States v. Bagwell, 961 F.2d 1450, 1455 (9th Cir. 1992). "Thus, under the mining laws, use of an unpatented mining claim on public land is limited to activities that are reasonably incident to prospecting, mining and processing operations, and subject to the right of the United States to manage surface resources." Backlund, 2012 U.S. App. LEXIS 8462, at *6.

Plaintiffs' mining and millsite claims only granted Plaintiffs the right to use the land in the Cleveland National Forest for prospecting, mining or processing operations and uses reasonably incident to mining. See 30 U.S.C. § 612(a); Backlund, 2012 U.S. App. LEXIS 8462, at *5-6. Therefore, these claims would only also grant Plaintiffs a right to use the stone structures if the structures were being used for mining or milling purposes or uses reasonably incident to mining. As in their first complaint, Plaintiffs do not allege anywhere in the FAC that the structures were being used for those purposes.[3] To the contrary, Plaintiffs allege that in 2003, representatives of the Forest Service conducted an inspection of their claims and the millsite and determined that the structures were not incidental to the mining operations, and that this decision was upheld on appeal. [FAC ¶¶ 43-49; see also Doc. No. 38-2, Ex. 2[4].] Plaintiffs do not allege in the FAC that this conclusion was in error or allege facts showing that the structures were incidental to their mining operations. Therefore, Plaintiffs allegations that they had valid mining claims and a millsite are insufficient to show that they had any property interest in the structures.

Plaintiffs also allege that in 1977, the Forest Service sent Plaintiffs a letter approving of their right to use the structures without requiring Plaintiffs to submit a plan of operations. [FAC ¶¶ 22-26, 28-29.] "Mining operations that will likely cause, or are causing, significant surface disturbance must be covered by an approved operating plan issued by the Forest Service. Mining

---

[3] Plaintiffs allege in 2004 that Forest Service records show that Plaintiffs were still mining quartz under a valid operating permit. [FAC ¶¶ 51, 70.] However, Plaintiffs do not allege that use of the stone structures was reasonably incident to their quartz mining operation.

[4] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the May 5, 2004 letter from the Forest Service to Plaintiffs because it is a matter of public record and part of the administrative record. See Lee, 250 F.3d at 689; Mack, 798 F.2d at 1282.

1  operations that are not likely to cause significant surface disturbance do not require an approved
2  operating plan." Backlund, 2012 U.S. App. LEXIS 8462, at *8 (citing 36 C.F.R. § 228.4(a)); see
3  also United States v. Brunskill, 792 F.2d 938, 940 (9th Cir. 1986).  Therefore, Plaintiffs appear to
4  allege that in 1977, the Forest Service found that the structures did not cause a significant surface
5  disturbance and Plaintiffs were granted a right to use the structures without an approved operating
6  plan.  However, in 2004, when the Forest Service concluded that the structures were not incidental
7  to Plaintiffs' mining operations, the Forest Service also stated that Plaintiffs were required to
8  obtain a plan of operation to use and occupy the stone structures pursuant to 36 C.F.R. § 228.4.
9  [Doc. No. 38-2, Ex. 2; see also FAC ¶¶ 52-54.]  In addition, the Forest Service decision goes on to
10 state that an approved plan of operation could not be authorized because the stone structures were
11 not reasonably incident to Plaintiffs' mining operation.  [Doc. No. 38-2, Ex. 2.]  Therefore, any
12 right Plaintiffs may have been granted in 1977 was revoked in 2004 when the Forest Service
13 determined that a plan of operation was required and that the stone structures were not reasonably
14 incident to Plaintiffs' mining operations.  Cf. Backlund, 2012 U.S. App. LEXIS 8462, at *6
15 ("[U]se of an unpatented mining claim on public land is limited to activities that are reasonably
16 incident to prospecting, mining and processing operations, and subject to the right of the United
17 States to manage surface resources.").  Again, Plaintiffs do not allege anywhere in the FAC that
18 this conclusion was in error or allege facts showing that the structures were incidental to their
19 mining operations.

20       Plaintiffs also allege that by at least August 2006, the Forest Service revoked their right to
21 use the structures and declared their claims null and void.  [FAC ¶¶ 57-62.]  Therefore, taking
22 these allegations as true, any interest that Plaintiffs might have had in the structures would have
23 reverted back to the government in 2006.  See, e.g., United States v. Biggs, 2007 U.S. Dist. LEXIS
24 82328, at *26-29 (E.D. Cal. Nov. 6, 2007) (stating that a cabin became property of the government
25 when plaintiff's mining claims were determined to void); see also Brothers v. United States, 594
26 F.2d 740, 740-42 (9th Cir. 1979).

27       Finally, as the Court noted in its prior order dismissing Plaintiff's complaint, Plaintiffs'
28 allegations stating that they were allowed to use the structures from 1977 to 2006 also cannot

create a property interest in the structures. A person cannot obtain a property right from the United States through adverse possession. See United States v. Cal., 332 U.S. 19, 39-40 (1947); United States v. Pappas, 814 F.2d 1342, 1343 n.3 (9th Cir. 1987).

In sum, even taking all the allegations in the FAC as true, Plaintiffs have failed to sufficiently allege that in September 2009, they had any right to use the structures or possessed any other property interest in the structures when they were demolished and removed. Therefore, Plaintiffs' claims for conversion, trespass to chattels, and negligence should also be dismissed to the extent they are based on the demolition of the stone structures. Because Plaintiffs' original complaint contained the same deficiencies mentioned above and Plaintiffs' FAC still fails to allege that Plaintiffs had any property interest in the stone structures, and it is Plaintiffs' sixth amended complaint overall considering the prior litigation before Judge Whelan,[5] the Court **DISMISSES WITH PREJUDICE** Plaintiffs' tort claims to the extent they are based on the demolition and removal of the stone structures.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' first amended complaint. The clerk is directed to close the case.

**IT IS SO ORDERED.**

**DATED:** May 8, 2012

**IRMA E. GONZALEZ**
**United States District Judge**

---

[5] In the prior litigation, in denying Plaintiffs' motion for a temporary restraining order, Judge Whelan held: "Plaintiffs do not, nor have they ever, owned the structures at issue. And although they do possess a millsite claim, which under the law cited by Defendants allows them to occupy the property incident to mining, that does not appear to entitle them to use and maintain physical structures on the property that the Forest Service has determined are not incidental to any ongoing or potential mining operations." [See Swanson v. Bureau of Land Mgmt., No. 06-cv-1560, Doc. No. 47 at 8.]